**In re Jose J. HERNANDEZ, Debtor.**

No. 11–15921–MM7.

United States Bankruptcy Court,
S.D. California.

March 19, 2012.

Jorge Halperin, Law Offices of Jorge Halperin, San Diego, CA, for Debtor.

## MEMORANDUM DECISION

MARGARET M. MANN, Bankruptcy Judge.

Collect Access, LLC ("Collect") brought a motion ("Motion") to vacate an order for turnover of personal property entered by the Court at the request of debtor Jose J. Hernandez ("Debtor"). The Motion raises issues about the respective rights of a creditor and debtor in funds that a levying officer has seized, but has not yet turned over to the creditor by the time the debtor files bankruptcy. The Debtor successfully moved the Court to compel turnover of the funds that were held by the sheriff on the petition date. Collect contends the turnover was wrongfully ordered because the Debtor did not have any rights in the funds after they were seized by the sheriff. Collect refused to comply with the turnover order and the Debtor also seeks damages for Collect's refusal to turn over the funds.

These disputes are governed by 11 U.S.C. § 542 and *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207, 103 S.Ct.

2309, 76 L.Ed.2d 515 (1983). In *Whiting Pools,* the Supreme Court held that funds held by the levying officer on the petition date are subject to turnover if the debtor has rights in the property. The scope of a debtor's rights in property is determined under non-bankruptcy law, (*see Stead v. United States,* 419 F.3d 944, 947 (9th Cir. 2005) (applying federal tax law to evaluate the debtor's rights)); here, California enforcement of judgment law.

Examining the applicable state statutes, the Court concludes the sheriff's levy on the funds created an execution lien, rather than an ownership interest. Cal.Civ.Proc. Code § 697.710.[1] This lien had not been extinguished as of the date of the bankruptcy petition, since the funds had not been released to Collect. *See* Cal.Civ. Proc.Code § 724.010(b).[2] The Debtor had rights to claim exemption for the funds, which he did in his bankruptcy schedules under Cal.Civ.Proc.Code § 703.140(b)(5). These rights rendered the funds subject to turnover. *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi),* 432 B.R. 812, 823 (9th Cir. BAP 2010) (debtor has right to seek turnover of exempt funds from a creditor as well as damages for relief from stay).

Upon reconsideration of its turnover order, the Court finds no error in its entry. The Court will also hold further proceedings on whether the Debtor can recover damages from Collect's failure to turn over the funds.

### I. Factual Background

A California state court judgment in favor of First Select, Inc. and against the Debtor was entered on August 30, 2000, and renewed on May 19, 2008, for $3,723.19. The Debtor is disabled and retired, and lives on social security benefits and the support of his family. Apparently as a successor to First Select, Inc.,[3] Collect submitted a writ of execution to the Los Angeles County Sheriff's Department (the "Sheriff") on July 12, 2011, three years after the judgment was renewed. The Sheriff levied funds from the Debtor's Wells Fargo Bank deposit account on Collect's instructions on September 7, 2011.

When the Debtor filed his chapter 7 bankruptcy petition September 27, 2011, the levied funds were still in the Sheriff's possession. The Debtor claimed the funds in the Wells Fargo Bank deposit account exempt under Cal.Civ.Proc.Code § 703.140(b)(5). About a month later, on November 3, 2011, the Debtor filed an Ex Parte Motion for Turnover of Personal Property ("Turnover Motion I") under 11 U.S.C. § 542, which was served on the chapter 7 trustee, the Sheriff, Zee Law Group, and Atlas Acquisitions LLC. On November 4, 2011, this Court granted Turnover Motion I and issued an order ("Turnover Order I") for the Sheriff to turn over $712.39 (the "Funds") to the Debtor. Apparently before receiving

---

**1.** Cal.Civ.Proc.Code § 697.710 provides that "[a] levy on property under a writ of execution creates an execution lien on the property from the time of levy until the expiration of two years after the date of issuance of the writ unless the judgment is sooner satisfied."

**2.** Cal.Civ.Proc.Code § 724.010(b) provides that "[w]here a money judgment is satisfied by levy, the obligation of the judgment creditor to give or file an acknowledgment of satisfaction arises only when the judgment credi-

tor has received the full amount required to satisfy the judgment from the levying officer."

**3.** Although the record is not clear when these transfers occurred, and no Bankruptcy Rule 3001(e) transfers of claims were filed, it appears First Select, Inc. later transferred its claim to Atlas Acquisitions LLC, who then transferred its claim to Collect. Each of these successor assignees were represented by Zee Law Group.

Turnover Order I, since this order was not served on anyone but the Debtor, the Sheriff sent the Funds to Zee Law Group on November 7, 2011.

The Debtor soon learned the Sheriff no longer held the Funds and filed his Motion for an Order directing Zee Law Group or Tappan Zee, Attorney at Law, to turn over the Funds ("Turnover Motion II") on November 21, 2011. The Debtor served this second motion on the same parties as the first. On November 29, 2011, the Court entered its order ("Turnover Order II", and collectively "Turnover Orders") directing Zee Law Group/Tappan Zee to turn over the Funds to Debtor.

Nearly a month after its counsel and predecessor were served with Turnover Motion I, Collect filed its opposition to it. Collect also shortly thereafter filed its motion to vacate Turnover Order II. The Debtor responded to Collect's opposition, and also alleged that Collect violated the

automatic stay and requested $1,100 in attorney fees.

The Court issued a tentative ruling on January 17, 2012, and entertained oral argument at the hearing on January 19, 2012. The Court then took the matter under submission.

## II. *Analysis*

### A. Collect's Motions Must be Evaluated under Bankruptcy Rule 9023

■ Collect requests that the Court vacate Turnover Order II,[4] which is tantamount to seeking reconsideration of it. *Am. Ironworks & Erectors Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 898–99 (9th Cir.2001). Although both Bankruptcy Rules 9023 (incorporating Fed.R.Civ.P. 59) and 9024 (incorporating Fed.R.Civ.P. 60), provide procedural vehicles for reconsideration of an order, each rule imposes different timing requirements and legal standards. Under the current timing protocol established by federal procedural rules, a

4. Whether this Court has constitutional authority to enter findings of fact and conclusions of law in this motion for reconsideration brought pursuant to Bankruptcy Rule 9013 based upon *Stern v. Marshall,* — U.S. —, 131 S.Ct. 2594, 2601–02, 180 L.Ed.2d 475 (2011), is an issue that the Court will address *sua sponte. See Musich v. Graham (In re Graham),* 455 B.R. 227, 232 n. 27 (Bankr. D.Colo.2011) (*sua sponte* consideration of authority to determine dischargeability of a state court debt). The Court believes it has such authority on a number of bases. As its statutory authority, 28 U.S.C. § 157(b)(1) permits this Court to hear and enter final judgments in core proceedings "arising under" or "arising in" Title 11. This Motion involving turnover of property of the estate is "core" to the Bankruptcy Code. 28 U.S.C. § 157(b)(2)(E) (orders to turn over property of the estate are statutorily core); *Korneff v. Downey Reg'l Med. Ctr.-Hosp., Inc. (In re Downey Reg'l Med. Ctr.-Hosp., Inc.),* 441 B.R. 120, 127 (9th Cir. BAP 2010) (stating that the bankruptcy court had jurisdiction to find that the property was part of the debtor's estate and subject to turn-

over); *In re McCrory,* 2011–2 U.S. Tax Cas. (CCH) P50,626, 2011 WL 4005455, at *1, 2011 Bankr.LEXIS 3403, at *2 (Bankr. N.D.Ohio 2011) ("Proceedings involving the turnover of property of the bankruptcy estate are core proceedings that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(E). The matter at issue is one that 'stems from the bankruptcy itself that is within this court's jurisdiction to decide." (*quoting Stern,* 131 S.Ct. at 2618)). In the Ninth Circuit, "the bankruptcy court ha[s] the authority to require the turnover of property of an estate." *Zimmerman v. First Union Nat'l Bank, N.A. (In re Silva),* 185 F.3d 992, 994 (9th Cir.1999).

This Memorandum Decision will serve as this Court's findings of fact and conclusions of law on the matters before it. If either of the parties challenges this Court's authority to enter a final turnover order here, the party challenging the authority of this Court must timely comply with the provisions of Bankruptcy Rule 9033 to seek *de novo* review of this Memorandum Decision from the District Court.

motion for reconsideration is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e) if it is filed within 14 days of entry of judgment. If it is filed after then, it is treated as a Rule 60(b) motion for relief from judgment. Because Collect's Motion was filed within 14 days of Turnover Order II, the Court will evaluate the Motion pursuant to Bankruptcy Rule 9023.

▮ Bankruptcy Rule 9023 allows reconsideration of the correctness and merits of the initial order. *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir.1999); *United Student Funds, Inc. v. Wylie (In re Wylie)*, 349 B.R. 204, 209 (9th Cir. BAP 2006); *see also, e.g., Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174–77, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (applying Fed. R.Civ.P. 59). This reconsideration is to be afforded only in extraordinary or highly unusual circumstances to promote the interests of finality and conservation of judicial resources. When the argument for reconsideration could have been raised at an earlier time in the litigation, the motion should be denied. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.2003); *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir.2000).

▮▮ Collect seeks reconsideration on two grounds. First, it claims it did not receive notice of Turnover Motion II until after the order granting this motion was entered on November 29, 2011. While that may be true, Collect through its counsel had notice of the bankruptcy case and specifically of Turnover Motion I well before then. Counsel delayed responding for two weeks, possibly because his client decided to rely on their receipt of the Funds from the Sheriff on November 7, 2011 to claim ownership. Even though Turnover Order I specifically compelled only the Sheriff, and not Collect, to turn over the Funds to the Debtor, Collect had an affir-

mative duty to terminate the levy process upon learning of the bankruptcy case. This duty was imposed by the automatic stay and Collect failed to respect it. *Cal. Empl't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151–52 (9th Cir.1996).

Collect's disregard of its affirmative duty to stop the garnishment for several weeks after he knew of the bankruptcy renders him an unworthy candidate for relief. His arguments could have, and should have, been raised earlier in the case as required by Bankruptcy Rule 9023. In any event, these untimely arguments are also substantively flawed.

### B. *Property of the Estate*

▮ Collect's second ground for reconsideration is that the Court erred in entering Turnover Order II because the Debtor had no rights in the Funds after September 7, 2011, when the Sheriff levied on them. Correcting a manifest error of law is an appropriate ground for reconsideration of an order. *McDowell*, 197 F.3d at 1255. The Court finds no such error, and leaves its initial rulings undisturbed.

▮ Subject to certain exceptions, the Bankruptcy Code requires creditors to turn over all property of a debtor's estate to the trustee. 11 U.S.C. § 542(a). Turnover of property to the debtor may also be ordered for exempt property. *Mwangi*, 432 B.R. at 823. Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see Whiting Pools*, 462 U.S. at 207, 103 S.Ct. 2309. In *Whiting*, the Supreme Court found that the taxpayer had rights under the Internal Revenue Code after its property had been seized, but not yet turned over to the creditor. *See id.* at 210–11, 103 S.Ct. 2309. Since that debt-

or's rights under tax law had not yet expired on the date of the petition filing, the debtor's interest in the property had not been fully extinguished and was property of the bankruptcy estate. *See id.* at 210–12, 103 S.Ct. 2309. "In effect, § 542(a) grants to the [debtor's] estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings." *Id.* at 207, 103 S.Ct. 2309. *Whiting* thus directs the Court to evaluate whether the Debtor retained any interest in the Funds on the petition date after the Sheriff had seized the Funds that could be used in his bankruptcy case. If so, this interest is transformed under 11 U.S.C. § 542(a) into a possessory interest.

▮ Under California law, the Sheriff's levy under Collect's writ of execution resulted in an execution lien,[5] rather than a transfer of ownership of the Funds. Cal. Civ.Proc.Code § 697.710; *see also Southern Cal. Bank v. Zimmerman (In re Hilde)*, 120 F.3d 950, 954 (9th Cir.1997) (describing creation and perfection of judgment liens under California law); *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 591–92 (9th Cir. BAP 1995) (levy

which created a lien rather than an ownership interest justified turnover of the property); *California Commerce Bank v. Superior Court*, 8 Cal.App.4th 582, 587, 10 Cal.Rptr.2d 418 (Cal.App.4th Dist.1992) (finding that the debtor was entitled to return of his bank account funds after the execution lien was extinguished by the payment of an appeal bond).

▮ Before Collect's lien could be transformed into its ownership of the Funds, the Sheriff had to release the Funds. Under Civ. Proc.Code § 697.710, an execution lien created by levy survives for the earlier of two years, or when the judgment is satisfied. Under Civ. Civ. Proc.Code § 724.010(b)[6], the judgment is not fully satisfied until the creditor receives the levied funds from the levying officer. *See Estate of Neilson*, 181 Cal. App.2d 769, 774, 5 Cal.Rptr. 542 (Cal. App.3d Dist.1960) (debtor's rights to obtain a stay exist until the levied funds are turned over by the sheriff to the creditor); *Walton v. Mueller*, 180 Cal.App.4th 161, 174, 102 Cal.Rptr.3d 605 (Cal.App. 6th Dist.2009) (receipt of funds is necessary for satisfaction of judgment); *see also* Cal.

---

5. It may well be the case that this lien would be avoidable as a preference since it was created on August 12, 2011, when the levy occurred, which was within the 90 days before the case was filed on September 27, 2011; this issue is not before the Court. That the lien as well as the payment were potentially avoidable transfers distinguishes this case from *In re Momentum Computer Systems International*, 66 B.R. 512, 515–16 (N.D.Cal. 1986), where the debtor was found to have no right in funds transferred from a third party to the sheriff since the lien was created outside the 90 days before the petition date. Even if there is no preference recovery action pending, the Court can consider whether a preference occurred in evaluating the debtor's and creditor's rights to the property at issue. *See Richardson v. Wells Fargo Bank (In re Churchill Nut Co.)*, 251 B.R. 143, 149 (Bankr. N.D.Cal.2000).

6. While the Court notes that § 724.010(b) refers only to *full* satisfaction of the judgment, and the Funds here were levied by the Sheriff in *partial* satisfaction of the judgment, that distinction is meaningless here. The issue before the Court is when Collect's execution lien is merged into an ownership interest; § 724.010(b) specifically requires delivery to the creditor before that can occur. Whether a full satisfaction of judgment can be compelled when the judgment has been partially paid is not germane here, since creditors must give credit to even partial payments in satisfaction of a judgment. *Murchison v. Murchison*, 219 Cal.App.2d 600, 606, 33 Cal. Rptr. 285 (Cal.App.2d Dist.1963) (court gave proper credit to partially satisfying a judgment by offset).

Civ.Proc.Code § 724.010(b) § 724.010(c) (providing that a judgment paid by check is not satisfied until the check clears). Since the Sheriff still held the Funds when the Debtor's petition was filed, Collect only held a lien under Cal.Civ.Proc.Code § 697.710 and Cal.Civ.Proc.Code § 724.010(b), because the second step of satisfaction had not occurred at this time.

Collect does not discuss these cogent statutory provisions, and relies almost exclusively [7] upon language in *Del Riccio v. Superior Court of Los Angeles County*, 115 Cal.App.2d 29, 31, 251 P.2d 678 (Cal. App.1952) to assert the Debtor had no further rights to the Funds, and that the Funds became Collect's property at the time of the levy:

> When the writ has been regularly issued and executed, money collected, while in the hands of the officer, is property of the judgment creditors and not the debtor. Nothing can be done with it other than to turn it over to the creditor. The possession of the officer solely for the use and benefit of the creditor is possession by the latter. As between the parties, the money should be deemed to have been delivered to the creditor immediately upon its receipt by the officer.... Correspondingly, when the debtor's money is taken on a valid execution it ceases to be his and he immediately becomes entitled to partial or full satisfaction of the judgment. The rights of the parties cannot be interfered with except through procedure authorized by statute.

Despite the broad language in *Del Riccio* that "money collected, while in the hands of the officer, is property of the judgment creditors and not the debtor," the case is not applicable here. *Del Riccio* merely held that courts have no inherent power to stay enforcement of a judgment in absence of specific statutory authority. *Id.; Curley v. Superior Court of Alameda County*, 199 Cal.App.2d 369, 371, 18 Cal. Rptr. 727 (Cal.App. 1st Dist.1962) (describing the limited holding of *Del Riccio* despite this quoted language). *Del Riccio* is also outdated. It interpreted former Cal. Civ. Proc. Code §§ 681(a) and 691 which were repealed and replaced in the 1983 amendments to the California enforcement of judgments act by Cal.Civ.Proc.Code §§ 918 and 699.530(a).[8] *California Commerce Bank*, 8 Cal.App.4th at 584, 10 Cal. Rptr.2d 418 recognized that the law had changed since *Del Riccio* was decided and confirmed that a levy creates a lien rather than a change in ownership that can be extinguished if the judgment debtor follows the statutory procedures for obtaining a stay pending appeal. *See also Neilson*, 181 Cal.App.2d at 773, 5 Cal.Rptr. 542 (citing *Del Riccio* but holding that debtor can seek a stay under applicable statutory authority until levied funds are released to the creditor.)

As properly constrained to its actual holding, *Del Riccio* does not support Collect's claim to the Funds. Unlike *Del Riccio*, 115 Cal.App.2d at 31, 251 P.2d 678, no stay of execution is at issue. More importantly, under the statutory provisions for a

---

**7.** Collect notes that the bankruptcy court in *Churchill Nut Co.*, 251 B.R. at 148, quoted the *Del Riccio* language that the debtor has no rights in levied funds when in the hands of the sheriff. However, by quoting the *Del Riccio* language, the bankruptcy court was merely describing the creditor's argument; not adopting it. It specifically found *Del Riccio* was inapplicable. *Id.*

**8.** This statute prescribes the duties of the levying officer to the creditor. *See Ellerbee v. County of Los Angeles*, 187 Cal.App.4th 1206, 1214–15, 114 Cal.Rptr.3d 756 (Cal.App.2d Dist.2010) (purpose of Cal.Civ.Proc.Code § 699.530(a) is to govern the relationship between the sheriff and the creditor).

levy in effect now, the levy only creates a lien until the funds are turned over to the creditor.

## C. The Debtor's Rights in the Funds Had Not Expired as of the Petition Date.

Undercutting its claim of ownership of the Funds outright, Collect concedes that the Debtor had exemption rights at the time of the levy. Referencing Cal.Civ. Proc.Code §§ 703.030(b)[9] and 703.520(a),[10] allowing a claim for exemption of levied funds, but only within 10 days of the levy, Collect argues that the Debtor's expired exemption rights cannot justify turnover of the Funds. *See Whiting Pools*, 462 U.S. at 206–07, 103 S.Ct. 2309 (expired rights do not provide a basis for turnover). Collect ignores that the Debtor had more than one potential exemption right in the Funds to assert on the petition date.

■ As averred in the Debtor's Schedules of Assets and Liabilities, he is retired and disabled. His only source of income, other than $100 of family contributions, is $636 in monthly social security benefits. Under state law, the Debtor's social security benefits are exempt pursuant to Cal. Civ.Proc.Code § 704.080(b) in the amount of $2,425. This exemption is automatic and the expiration of the 10–day period of Cal.Civ.Proc.Code § 703.520(a) does not apply. "Some exemptions need not be claimed. They are automatic and are denoted by the statutory term of art 'exempt without making a claim,' which has the effect of eliminating the applicability of the

procedure for enforcing a money judgment." *In re Petruzzelli*, 139 B.R. 241, 243 (Bankr.E.D.Cal.1992). Cal.Civ.Proc. Code § 704.080(b) contains this term of art and the Debtor had a right to claim the Funds exempt under this statute that is not time barred.

■ Another exemption potentially available to the Debtor is the one he claimed on his schedules; the wild card exemption under Cal.Civ.Proc.Code § 703.140(b)(5). Collect does not offer a reason why this wild card exemption was not available to the Debtor when he filed, other than its suggestion that the expiration of the 10–day period of Cal.Civ.Proc. Code § 703.520(a) was controlling. But state court exemption procedure is not controlling in bankruptcy. *See Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 687 (9th Cir. BAP 2000) ("To the extent that the California exemption law attempts to establish a procedure that overrides the well-settled bankruptcy law regarding the date for determining an exemption, it is preempted."). What controls here is the 30–day period provided for objecting to exemptions under Bankruptcy Rule 4003(b) (*see Kim*, 257 B.R. at 687), and that wild card exemption under Cal.Civ. Proc.Code § 703.140(b)(5) was determined as of the petition date. The time to object to the Debtor's exemption expired on October 27, 2011, but neither Collect nor any other party timely objected to the Debtor's claim that the Funds were exempt.

The Turnover Orders were not entered in error and the Court declines to vacate

---

9. Cal.Civ.Proc.Code § 703.030 provides "[e]xcept as otherwise specifically provided by statute, property that is described in this chapter or in any other statute as exempt without making a claim is not subject to any procedure for enforcement of a money judgment."

10. Cal.Civ.Proc.Code § 703.520(a) provides that "[t]he claimant may make a claim of exemption by filing with the levying officer a claim of exemption together with a copy thereof. The claim shall be made within 10 days after the date the notice of levy on the property claimed to be exempt was served on the judgment debtor."

them. Collect will be ordered to turn over the Funds to the Debtor no later than seven days after entry of the order denying the Motion.

### D. The Debtor's Claim for Damages for Collect's Violation of the Automatic Stay

■■■■ The duty of an entity in possession of estate property to deliver property of the estate to the trustee or debtor-in-possession is a mandatory duty arising upon the filing of a bankruptcy petition. *Del Mission,* 98 F.3d at 1151–52; *see also Whiting Pools,* 462 U.S. at 211, 103 S.Ct. 2309 (seized property subject to a tax lien must be turned over pursuant to section 542). "To effectuate the purpose of the automatic stay, the onus to return estate property is placed upon the possessor; it does not fall on the debtor to pursue the possessor." *Del Mission,* 98 F.3d at 1151; *see also Franchise Tax Bd. v. Roberts (In re Roberts),* 175 B.R. 339, 343 (9th Cir. BAP 1994) ("[A] garnishing creditor has an affirmative duty to stop garnishment proceedings when notified of the automatic stay."); *Carlsen v. Internal Rev. Serv. (In re Carlsen),* 63 B.R. 706, 709–11 (Bankr. C.D.Cal.1986) (affirmative action on the part of the garnishor was required not only to halt the garnishment but also to turn over the sums it had received). "[T]he *failure* to return property of the estate with knowledge of the bankruptcy is a violation of both the automatic stay and of the turnover requirements of the Bankruptcy Code." *Abrams v. Southwest Leasing and Rental Inc. (In re Abrams),* 127 B.R. 239, 241–42 (9th Cir. BAP 1991) (emphasis added). "Once a creditor knows that the automatic stay exists, the creditor bears the risk of all intentional acts that violate the automatic stay regardless of whether or not the creditor means to violate the automatic stay." *Assoc. Credit Servs. v. Campion (In re Campion),* 294 B.R. 313, 318 (9th Cir. BAP 2003); *see also Sternberg v. Johnston,* 595 F.3d 937, 945 (9th Cir.2010) ("[The creditor] needed neither to make some collection effort nor to know that his actions were unlawful for his violation to be willful.").

■■■■ Upon receiving notice of the Debtor's September 27, 2011 bankruptcy petition,[11] Collect had an affirmative obligation to cease its collection procedures and notify the Sheriff to return the property. It failed to do so, resulting in the Sheriff's release of the Funds to Collect on November 7, 2011. This release violated the automatic stay and was void. *See Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 571 (9th Cir.1992) ("[V]iolations of the automatic stay are void, not voidable."); *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola),* 328 B.R. 158, 171 (9th Cir. BAP 2005) ("[A]cts in violation of the automatic stay are void and of no effect.").

■■■■ Bankruptcy Code section 362(k) permits a person injured by any willful violation to recover actual and punitive damages, as sanctions for willful violations. That the creditor had an argument that its conduct was appropriate is no defense. *Johnston Envtl Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir. 1993) (" 'Whether the [defendant] believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.' " (*quoting Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 482 (9th Cir.1989))). In the Debtor's response to

---

11. Collect and its attorney, Tappan Zee, were given notice of Debtor's Chapter 7 petition on the date of filing, September 27, 2011.

Collect's opposition, the Debtor asserted $1,100 in damages from Collect's violation of the automatic stay. Upon an application for fees and costs by the Debtor, subject to response from Collect, the Court will consider an order assessing Debtor's actual damages for Collect's violation of the automatic stay.

### III. *Conclusion*

This Memorandum Decision will constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. The Court will prepare its own order in this matter.